**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TRAVELERS PROPERTY CASUALTY**
**COMPANY OF AMERICA,**

      **Plaintiff,**

**-vs-**                 **Case No. 6:11-cv-19-Orl-28GJK**

**CHARLOTTE PIPE & FOUNDRY**
**COMPANY, LUBRIZOL ADVANCED**
**MATERIALS, INC., THE LUBRIZOL**
**CORPORATION, and SPIRIT GROUP,**
**INC.**

      **Defendants.**

_____

## ORDER

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), Defendants Charlotte Pipe & Foundry Company ("Charlotte"), and Spirit Group, Inc. ("Spirit") (collectively "Defendants")[1] have filed motions to dismiss the Amended Complaint filed against them by Plaintiff Travelers Property Casualty Company of America ("Travelers").[2] As discussed

---

[1] Defendants Lubrizol Advanced Materials, Inc. and The Lubrizol Corporation (collectively "Lubrizol") have settled with Travelers. (See Doc. 143). Therefore, the motion to dismiss (Doc. 47) filed by these two Defendants will be denied as moot and they shall be dismissed from this case.

[2] The relevant filings include: Charlotte's Motion to Dismiss Amended Complaint (Doc. 50), Travelers' Response (Doc. 63), Charlotte's Reply (Doc. 72), and Travelers' Sur-Reply (Doc. 73); and Spirit's Motion to Dismiss the Amended Complaint (Doc. 52) and Travelers' Response (Doc. 64).

below, Charlotte's motion shall be granted in part and denied in part, and Spirit's motion shall be granted.

## I. Background

RIDA Development Corporation ("RIDA") was the owner and developer of the Hilton Convention Center ("the Convention Center") in Orlando and was insured by Travelers. (Am. Compl. ¶ 15). Through a series of contractors and subcontractors, the Convention Center's potable water system was developed using Corzan Schedule 80 CPVC ("Corzan") pipe and fittings. (Id. ¶ 16). The pipe and fittings were alleged to have been "manufactured by Defendants, Charlotte and/or Lubrizol, utilizing component materials manufactured by and licensed from Defendant, Lubrizol." (Id. ¶ 17). The Amended Complaint is silent as to the identity of the person or entity that installed the pipe and fittings. On August 4, 2009, a six-inch Corzan joint connection–consisting of a pipe and fitting–located below the Convention Center's hot water tank failed, causing flooding and substantial property damage. (Id. ¶¶ 18-19). Travelers paid RIDA a sum in excess of $6.925 million for its damages, and as RIDA's subrogee Travelers now seeks to recover that sum from Defendants. (Id. ¶¶ 46, 49).

The Amended Complaint explains that RIDA had concerns regarding the Corzan pipe and fittings before the August 4, 2009 incident. Between November 2008 and May 2009, four Corzan pipe and fitting installations on the project were alleged to have failed in the same manner. (Id. ¶ 20). These failures, as well as a number of "interference fits" led to meetings of RIDA's general contractor, Welbro Building Corp. ("Welbro"), its plumbing subcontractor, Progressive Plumbing Inc. ("Progressive"), and "representatives" of each Defendant. (Id. ¶¶ 21-23).

Travelers' Amended Complaint contains separate counts against each of the Defendants: against Charlotte—Count I-Strict Liability, Count II-Negligence, Count III-Negligent Misrepresentation; and against Spirit—Count VIII-Negligent Misrepresentation and Count IX-Fraudulent Misrepresentation. Defendants' motions to dismiss are directed to each of these counts, and arguments contained therein overlap as to the misrepresentation claims. The merits of these arguments will be discussed categorically.

## II. Analysis

Defendants present three separate arguments for why the Amended Complaint fails to state a claim in any of the counts. First, Defendants assert that all of Travelers' claims are barred by the economic loss rule. Second, Defendants assert that even if the claims are not barred by the economic loss rule, Travelers has failed to adequately allege a product defect and has failed to plead negligent or fraudulent misrepresentation with sufficient particularity under Rule 9(b).

### A. Economic Loss Rule

Although RIDA contracted for the development of the property, no claim for breach of contract is included in the Amended Complaint; rather, all counts purport to state causes of action for torts. Defendants argue that allowing Travelers to proceed would violate Florida's economic loss rule. "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004). Economic loss includes "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim

of personal injury or damage to other property." Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc., 620 So. 2d 1244, 1246 (Fla. 1993) (internal quotation omitted). It also includes "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold. In other words, economic losses are disappointed economic expectations, which are protected by contract law, rather than tort law." Id. (internal quotation omitted). The Florida economic loss rule is applied in two circumstances. "The first is when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract. The second is when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." Indem. Ins. Co. of N. Am., 891 So. 2d at 536. It is the second circumstance that is relevant in this case.

The parties' arguments focus on how "other property" is defined in the context of the economic loss rule. In its Amended Complaint, Travelers makes a claim for damage to "couches, drywall, beds, furniture, sinks, wall paper, appliances, as well as interruption losses in excess of $6,925,000." (Am. Compl. ¶¶ 44, 50, 59, 73, 79, 88, 97, 106, & 115). Defendants argue that the product RIDA contracted for–to which the economic loss rule applies–was the completed Convention Center. Defendants further argue that the items within the Convention Center, such as the furniture and appliances, were all included in the completed Convention Center and therefore do not constitute "other property." Following this line of reasoning, Defendants assert that the only damages alleged would have been damages to the product that RIDA contracted for–the completed Convention Center–and

therefore the claims are barred by the economic loss rule because they do not allege damage to "other property."

Travelers, on the other hand, argues that the potable water system, not the completed Convention Center, is the product that the economic loss rule applies to, and that damage to anything other than the potable water system should be considered damage to "other property." Travelers further asserts that even if the Convention Center is considered the product to which the economic loss rule applies, the couches, drywall, beds, furniture, sinks, wall paper, and appliances are not part of the Convention Center and therefore its claims are not barred by the economic loss rule.

In order to determine what property the economic loss rule applies to and what constitutes "other property," the Court "must look to the product purchased by the plaintiff, not the product sold by the defendant." Casa Clara, 620 So. 2d at 1247. At this point, it cannot be determined exactly what was purchased by RIDA because the contracts at issue are not currently before the Court. However, reading the allegations in the light most favorable to Travelers, it appears that the relevant property was, at most, the Convention Center building but not all of the furnishings within. Accordingly, the Amended Complaint will not be dismissed on the basis of the economic loss rule.

### B. Products Liability

Travelers alleges both strict liability and negligence counts against Charlotte (Counts I & II) based on design and manufacturing defects in the Corzan pipe and fittings, and Charlotte asserts that these claims fail to sufficiently allege a product defect. Under Florida law, a plaintiff may proceed under both the theory of strict liability and the theory of

negligence, U.S. Mineral Prods. Co. v. Waters, 610 So. 2d 20, 22 (Fla. 3d DCA 1992), but it is necessary in each instance to plead the existence of a defect in the product, see Jennings v. BIC Corp., 181 F.3d 1250, 1255 (11th Cir. 1999) (providing the elements of strict products liability under Florida law, including the requirement that "the product has a defect that renders it unreasonably dangerous"); Marzullo v. Crosman Corp., 289 F. Supp. 2d 1337, 1342 (M.D. Fla. 2003) (noting that in order to establish a prima facie case for negligence "[i]n the context of products liability, . . . [t]he plaintiff . . . must establish that the product was defective or unreasonably dangerous"); see also Krywokulski v. Ethicon, Inc., No. 8:09-CV-980-T-30MAP, 2010 WL 326166, at *2-3 (M.D. Fla. Jan. 21, 2010) (discussing both negligence and strict liability in the context of products liability).

Charlotte argues that the allegations contained in the strict liability and negligence counts against it fail to plead facts describing the alleged defect in the pipe and fittings sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). In its strict liability claims, Travelers alleges that Charlotte "designed, manufactured, distributed and/or sold" the pipe and fittings which were "defective and unreasonably dangerous" in one or more of the following ways:

> A. The pipe and fittings and the component parts were improperly designed physically and/or chemically so they would not maintain an appropriate bond when properly installed and being used in their intended manner;
>
> B. The pipe and fittings and the component parts were improperly manufactured, physically and/or chemically, including but not limited to being improperly extruded, so they would not maintain an appropriate bond when properly installed and being used in their intended manner;

    C. The pipe and fittings and the component parts were improperly designed and/or manufactured, so that they would experience growth patterns and a coefficient of expansion that were unintended and unreasonably dangerous causing pipe and fitting connections to come apart when installed properly and while being used in their intended manner;

    D. The pipe and fittings and/or component parts were sold with insufficient and incomplete installation instructions so that even if followed precisely and completely, the Corzan . . . pipe and fittings would suddenly and without warning come apart;

    E. Charlotte adopted a design and manufacturing process which was not common, usual, customary, prudent or in accordance with established industry standards relating to the design and/or manufacture of similar products with intended and/or foreseeable functions; and

    F. Other design and manufacturing defects which discovery will reveal.

(Am. Compl. ¶ 37). The factual allegations in Travelers' negligence claim are nearly identical; the only difference is that in the negligence claim, Travelers alleges that Charlotte acted negligently. (Am. Compl. ¶ 49). Charlotte contends that, by not describing the defect in more detail, Travelers has not met the required pleading standard announced in Twombly and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

  Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The facts alleged in a complaint need only be sufficient to "state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The plausibility standard is less demanding than a requirement of probability, but it requires "more than a sheer possibility

that a defendant has acted unlawfully." Id. A plaintiff must do more than provide "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555. While in considering the merits of a Rule 12(b)(6) motion to dismiss a court must accept allegations of fact as true, but legal conclusions in a complaint need not be accepted. Iqbal, 129 S. Ct. at 1949.

Charlotte complains that merely alleging that the parts failed to bond does not describe a defect in the Corzan pipe and fittings and does not put Charlotte on notice as to an alleged defect in the pipe or fittings. Charlotte further asserts that there is no hint in the Amended Complaint as to how the pipe or fittings were either improperly designed or manufactured "physically or chemically" and that for the most part, the allegations may be summed up as a claim by Travelers that for some unknown reason the bonds in the pipe and fittings failed and it must be the fault of the Defendant manufacturers.

Travelers does not argue that the allegations contained in subparagraphs E and F are sufficient, and they are not. Standing alone, they constitute the kinds of legal conclusions and buzzwords that run afoul of Twombly. Subparagraph E is cryptic—it alleges that Defendants' design and manufacturing processes were outside industry standards, but it does not identify the standard or state how the product fails to conform to those standards.[3] Subparagraph F is simply a legal conclusion in the form of a promise of proof to come but void of factual foundation.

---

[3] However, this allegation does undermine Charlotte's argument that Travelers failed to allege that the Corzan pipe and fittings failed to conform to industry standards.

-8-

Travelers does contend, however, that the defects described in subparagraphs A through D do sufficiently allege defects in the pipe and fittings. These contentions are unavailing as to subparagraphs A and B, wherein the allegations lack a description of defect. These subparagraphs state only that the pipes did not bond because they were improperly designed or manufactured; they do not, however, do so in any way that describes the defect. Travelers contends that its allegations in subparagraphs A and B are similar to those in Brandt v. Depuy Orthopaedics, Inc., No. 6:10-cv-306-Orl-19KRS, 2010 WL 2612037 (M.D. Fla. June 28, 2010), which the court found sufficient to state a claim. However, the allegations in Brandt specifically stated the part of the product that contained the alleged design–the femoral knee component of a knee prosthesis–and the defect–that the component delaminated. To the contrary, in subparagraphs A and B Travelers fails to make any fact-based allegations and does not identify either the particular defective component or the particular defective characteristic. Based on these conclusions, one cannot draw a reasonable inference that Charlotte has designed or manufactured a defective product.

The allegations in subparagraphs C and D are different. Although they do not provide a scientific basis for the claimed defect, they do go some distance in describing what allegedly went wrong with the pipe and fitting joints. In subparagraph C, Travelers alleges that the product was designed or manufactured in such a way that it "would experience growth patterns and a coefficient of expansion" that caused the joints to come apart when they were being used as intended. In other words, the pipe and fittings expanded more than contemplated by Charlotte, and it was this expansion of the Corzan that caused the joints to come apart. This claim is facially plausible, allowing an inference that there was a defect

in the design or manufacturing of the Corzan product.  It is not necessary that the Amended Complaint contain a precise scientific explanation for the failed bonds.

Subparagraph D is also sufficient in establishing plausibility; it claims that the product was defective due to Defendants' instructions for use.  See Scheman-Gonzalez v. Saber Mfg. Co., 816 So. 2d 1133, 1139 (Fla. 4th DCA 2002) ("[A] product is considered defective when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings and their omission renders the product not reasonably safe." (quotation omitted)).

### C.  Misrepresentation

Defendants assert that Counts III and VIII for negligent misrepresentation and Count IX for fraudulent misrepresentation must be dismissed because those counts fail to meet the heightened pleading requirement provided in Federal Rule of Civil Procedure 9(b).  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "[B]ecause negligent misrepresentation sounds in fraud," this heightened pleading standard applies to claims of negligent as well as fraudulent misrepresentation.  Linville v. Ginn Real Est. Co., 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010) (quotation omitted); see also Souran v. Travelers Ins. Co., 982 F.2d 1497 (11th Cir. 1993) ("[I]n Florida an action for negligent misrepresentation sounds in fraud rather than negligence.").  "To satisfy Rule 9(b)'s 'particularity' standard," a complaint must "identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants gains by the alleged fraud.

West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (citing Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316-17 (11th Cir.2007)). Also, when multiple defendants are accused of misrepresentation, specific allegations are required as to each; a complaint should advise each defendant of the nature of his participation in the fraud. Ambrosia Coal, 482 F.3d at 1317.

Travelers offers the same allegation of facts in support of each of its claims of misrepresentation:

> At all times material hereto, and specifically, during the May 2009 meeting, as part of the process to determined the cause of the Corzan . . . pipe and fittings failures at the property, [Defendant] owed and/or undertook a duty to accurately respond to inquiries by RIDA through its representatives about prior system failures and other incidents or problems with [Defendant's] Corzan . . . pipe and fitting systems. In response to these inquiries by RIDA, [Defendant] stated that it was unaware of any prior Corzan . . . pipe and fittings system failures, and that its Corzan . . . pipe and fittings had no prior problems. These statements were factually wrong in that the Corzan . . . pipe and fittings had been involved in prior system failures and had suffered other problems of joint failure in buildings throughout the country.

(Am. Compl. ¶¶ 55, 102, 111). The Amended Complaint also contains allegations that although Defendants knew about prior failures, they represented to Welbro and Progressive that they had no such knowledge. (Id. ¶¶ 31-32, 56, 103, 112).

The allegations of misrepresentation lack sufficient particularity in two respects. The statements are not attributed to a specific person, but instead to corporate entities. This omission is aggravated by the fact that the allegations also fail to identify the representatives of RIDA to whom the statements were made. In other words, Travelers claims that a meeting occurred in May with its representatives—perhaps the agents of Welbro and Progressive—and representatives of Defendants, during which critical statements were

made, but not a single participant is identified by name, title, position, or otherwise. In addition, Travelers has alleged that Charlotte, Lubrizol,[4] and Spirit made the exact same misrepresentations at the same time. It is unlikely that all three said the same thing at the same May meeting, but if that is the case, the speakers should be identified.

Because the lack of specificity with regard to the identity of the speakers necessitates repleading, it is not necessary to address in detail Defendants' other arguments with regard to particularity. Should Travelers decide to file a Second Amended Complaint, however, in addition to identifying the person making the statement and the person to whom it was made Travelers should specify the date and place the alleged misrepresentations were made or state why it is unable to do so.

## III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Charlotte's Motion to Dismiss Amended Complaint (Doc. 50) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** insofar as it seeks dismissal of Count III, it is **DENIED** in all other respects;

2. Spirit's Motion to Dismiss the Amended Complaint (Doc. 52) is **GRANTED**;

3. Counts III, VIII and IX are **DISMISSED without prejudice**;

4. In accordance with the settlement reached between Travelers and the Lubrizol Defendants, (see Doc. 143), Counts IV, V, VI, and VII are **DISMISSED with prejudice**,

---

[4] Whether Lubrizol made such statements is irrelevant at this point, as Lubrizol is no longer a party to this action. It is significant, however, that in the Amended Complaint Travelers alleged that all three of the Defendants said the same thing at the same time.

-12-

Defendants Lubrizol Advanced Materials, Inc. and The Lubrizol Corporation are **DISMISSED from this case with prejudice**, and the Motion to Dismiss (Doc. 47) filed by Defendants Lubrizol Advanced Materials, Inc. and The Lubrizol Corporation is **DENIED as moot**; and

5. Travelers may file a Second Amended Complaint **on or before Friday, April 6, 2012.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 22nd day of March, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party